827 P.2d 159

Anselmo SERRANO, Plaintiff–Appellee,

v.

STATE of New Mexico, DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Defendant–Appellant.

No. 11729.

Court of Appeals of New Mexico.

Feb. 4, 1992.

Andres A. Benavidez, Albuquerque, for plaintiff-appellee.

Tom Udall, Atty. Gen., Albert Roland Fugere, Special Asst. Atty. Gen., Santa Fe, for defendant-appellant.

## OPINION

FLORES, Judge.

The Department of Alcoholic Beverage Control (ABC) appeals from the district court's order reversing the State Personnel Board's (Board) decision to terminate Anselmo Serrano (Serrano) from his employment. ABC raises several issues which will be consolidated for purposes of this appeal. We address three issues: (1) whether Serrano met the definition of "police officer" pursuant to NMSA 1978, Section 29–7–7(F) (Cum.Supp.1981), (2) whether Serrano was subject to the law enforcement certification requirements of NMSA 1978, Section 29–7–8 (Cum.Supp.1981), and (3) whether ABC's termination of Serrano was in violation of article II, Section 19, of the New Mexico Constitution. We reverse.

## FACTS

Serrano was hired as a full-time employee of ABC in 1972. At that time ABC agents were not required to be certified as police officers under New Mexico law. The attorney general's office stated in a letter-opinion, dated September 1984, that the certification requirement of Section 29–7–8 applies to ABC officers. Pursuant to that attorney general's letter-opinion, ABC informed Serrano in November 1984 that he must meet the law enforcement certification requirement of Section 29–7–8 because Serrano, as an employee of ABC, fell within the new expanded definition of a police officer. After repeated attempts, Serrano failed to meet the law enforcement certification requirement and was eventually terminated from his employment in March 1986.

Serrano appealed his termination to the Board, which upheld the termination by ABC. Serrano appealed to the district court, which found that Serrano's termination was arbitrary, capricious, and not in accordance with law. The district court ordered that the decision of the Board be reversed and remanded to the Board for proceedings consistent with the district court's order.

## STANDARD OF REVIEW

Appellate review of an administrative agency decision is "limited to determining whether the agency acted within the scope of its authority, whether the order was supported by substantial evidence, whether the decision was made fraudulently, arbitrarily or capriciously, and whether there was an abuse of discretion or show of bias by the agency." *In re Mountain Bell,* 109 N.M. 504, 505, 787 P.2d 423, 424 (1990).

We employ the whole record standard of review in making this determination. *See id.*

## DEFINITION OF A POLICE OFFICER PURSUANT TO SECTION 29–7–7(F)

■ In 1971, the legislature enacted a law defining a police officer as "any full-time employee of a police department which is part of or administered by the state or any political subdivision thereof and which employee is responsible for the prevention and detection of crime and the enforcement of the penal, traffic or highway laws of this state." 1971 N.M.Laws, ch. 247, § 3 (codified at NMSA 1953, 2d Repl.Vol. 6 (1972), § 39–6–11). At the time of Serrano's initial hiring in 1972, his employment position did not fall within the definition of a police officer pursuant to Section 39–6–11. Therefore, Serrano was not required to comply with the provisions of Section 39–6–10, requiring police officers to obtain a law enforcement certificate. NMSA 1953, 2d Repl.Vol. 6 (1972), § 39–6–10.

However, in 1981 the legislature expanded the coverage of the certification requirement for law enforcement officers by changing the definition of "police officer" from full-time employees of a "police department" to include those individuals who were full-time employees of a "law enforcement agency." 1981 N.M.Laws, ch. 114, § 6 (codified at § 29–7–7(F), formerly § 39–6–11). Section 29–7–7(F) provides in pertinent part:

> "[P]olice officer" means any full-time employee of a law enforcement agency which is part of or administered by the state or any political subdivision thereof and which employee is responsible for the prevention and detection of crime and the enforcement of the penal, traffic or highway laws of this state.

The duties performed primarily determine whether a person's employment position is of a law enforcement nature or whether an agency is a law enforcement agency. *See Anchondo v. Corrections Dep't,* 100 N.M. 108, 666 P.2d 1255 (1983). At all pertinent times, ABC has been a state agency authorized to administer and enforce the Liquor Control Act (Act). NMSA 1978, § 60–4B–2(A)(1) (Repl.Pamp.1987). Part of ABC's duties have been to engage in the prevention and detection of crime, and to enforce numerous penal provisions of the Act. *See, e.g.,* NMSA 1978, § 60–7A–19 (Repl.Pamp.1987). ABC's agents and other employees have been commissioned as peace officers in the performance of their duties. NMSA 1978, § 60–4B–2(B) (Repl.Pamp 1987). Therefore, ABC has been a law enforcement agency, and Serrano, as a full-time employee of ABC, has come within the new expanded definition of "police officer" pursuant to Section 29–7–7(F).

## CERTIFICATION REQUIREMENT OF SECTION 29–7–8

■ Having determined that Serrano was a full-time employee of ABC, and as such, a "police officer" within the meaning of Section 29–7–7(F), we consider whether Serrano was subject to the law enforcement certification requirement of Section 29–7–8. In 1981, the legislature amended the requirements for police officers, but retained the law enforcement certification requirement of Section 39–6–10, which had been in effect since 1971. 1981 N.M.Laws, ch. 114, § 9 (codified at § 29–7–8, formerly § 39–6–10). Section 29–7–8 provides in pertinent part:

> **Prerequisites for permanent appointment and continued employment as a police officer.**
>
> A. Notwithstanding any provisions of any general, special or local law to the contrary, no person shall receive an original appointment on a permanent basis as a police officer to any law enforcement agency in this state unless such person:
>
> ....
>
> (6) has previously been awarded a certificate by the director attesting to such person's satisfactory completion of an approved basic law enforcement training program.

First, Serrano contends that Section 29–7–8 does not apply to him because he was employed in 1972 as a permanent employee of ABC and had never received an "original appointment" as a police officer. We do

not agree. Section 29-7-8 became applicable to Serrano by operation of law in 1981 when the legislature expanded the definition of "police officer" to include employees of law enforcement agencies. Therefore, on April 3, 1981, the effective date of Section 29-7-7(F), Serrano received his "appointment" as a police officer and as such he became subject to the completion of the certification requirement of Section 29-7-8.

Serrano had twelve months from the date of his appointment as a police officer to complete his law enforcement certification requirement under Section 29-7-8(B). Section 29-7-8(B) states:

> B. Every person who is employed on a temporary basis by any law enforcement agency in this state shall forfeit his position as such unless within twelve months from the date of his employment he satisfactorily completes a basic law enforcement training program and is awarded a certificate attesting thereto.

Serrano received his "appointment" on a temporary basis under Section 29-7-7(F) on its effective date in April 1981 and was required to obtain law enforcement certification by April 1982, pursuant to Section 29-7-8(B). However, Serrano continued as an employee of ABC, without obtaining certification before his termination in March 1986. In this regard, Serrano contends that he in fact obtained such certification. But the record reflects that the certification he obtained was pursuant to a different statute and was not an equivalent or substitute for the certification required by Section 29-7-8.

Second, Serrano argues that because he was appointed to his employment position prior to the statute's effective date of April 3, 1981, he was exempted from the law enforcement certification requirement of Section 29-7-8. We do not agree.

■ Our construction of the statute is supported by the heading of the 1981 enactment. In 1981, the legislature changed the heading of Section 29-7-8 from "Prerequisites for permanent appointment as a police officer" to "Prerequisites for permanent appointment and *continued* employment as a police officer." (emphasis added). While the heading cannot be used to produce an ambiguity in a statute which is otherwise clearly drafted, *State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216 (1981), a legislatively enacted section heading may be useful in determining legislative intent in a statute which is ambiguously drafted. *American Auto. Ass'n v. Bureau of Revenue*, 88 N.M. 148, 538 P.2d 420 (Ct.App.), *rev'd on other grounds*, 88 N.M. 462, 541 P.2d 967 (1975). Here, to the extent that the statute is ambiguous in failing to address explicitly whether the statutory provisions apply to employees hired prior to April 3, 1981 (the effective date of Section 29-7-8), it is appropriate to use the heading as a guide in determining legislative intent. The legislatively enacted heading of Section 29-7-8 specifically added the word "continued," thereby indicating the legislative intent to require that the certification requirement be met not only by new employees but also by employees of law enforcement agencies hired prior to the effective date of the definition change of "police officer" in 1981.

■ Additionally, Serrano argues that public policy requires that those persons appointed before April 3, 1981 (the effective date of Section 29-7-8) be "grandfathered in." We do not agree. Public policy in this regard is governed by legislation. The original version of Section 29-7-8 provided that "[t]he Director of the New Mexico Law Enforcement Academy shall waive the * * * training requirements for all officers who are serving full time three months after the effective date of this section and shall award each such officer a certificate." In 1979, the legislature repealed the original version of Section 29-7-8 and enacted a new Section 29-7-8 which omitted the "grandfather" clause. 1979 N.M.Laws, ch. 202, § 48. In this circumstance, the enactment of a statutory amendment is presumptive evidence of a legislative intent to change the provisions of the former law and to accord a meaning different from that which existed prior to the amendment. *See State ex rel. Bird v. Apodaca*, 91 N.M. 279, 573 P.2d 213 (1977). The omission indicated a legislative inten-

tion to require all employees to fulfill the law enforcement certification requirement of Section 29–7–8.

## IMPAIRMENT OF CONTRACT

 Although Serrano states in his brief that this case does not involve a contract issue, he argues that ABC violated article II, Section 19, by forcing him to meet the certification requirements of Section 29–7–8. We need not reach the constitutionality argument raised by Serrano. Serrano is foreclosed from arguing this issue because of the statutory requirement of a valid written contract under NMSA 1978, Section 37–1–23 which states that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." We have reviewed the record and fail to find any written contractual provision before us. However, assuming without deciding that a written contract existed, changing the requirements for Serrano's employment position would not be an unconstitutional impairment of contract. *See Temple Baptist Church, Inc. v. City of Albuquerque*, 98 N.M. 138, 147, 646 P.2d 565, 574 (1982) ("Existing contracts are subject to the legitimate exercise of police power".).

## CONCLUSION

We reverse the district court's order and affirm the decision of the Board. The parties shall bear their own costs on appeal.

IT IS SO ORDERED.

HARTZ and BLACK, JJ., concur.